IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**SWVA, Inc.,**
**Employer Below, Petitioner**

**FILED**
**December 2, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 22-ICA-57**        (BOR: 2058060)
                                  (JCN: 2021005921)

**BRANDON M. CAUDILL,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner SWVA, Inc. appeals the August 3, 2022, order of the West Virginia Workers' Compensation Board of Review ("Board"). Respondent Brandon M. Caudill filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in reversing and vacating the March 18, 2022, order of the West Virginia Workers' Compensation Office of Judges ("OOJ") which affirmed the claim administrator's October 15, 2020, order denying Mr. Caudill's claim for left knee sprain and post-injury deep vein thrombosis.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' briefs, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Caudill, then a twenty-eight-year-old steelworker at petitioner's facility, injured his knee while working on August 28, 2020. On that day Mr. Caudill's crew was tearing down and rebuilding mills in the equipment hole, during which Mr. Caudill squatted down to set five delivery guards on the finish mill. Mr. Caudill was in a squatted position for approximately three to five minutes while he was lining up the delivery guards on the paths, and when he finished, he stood up and felt a painful tearing sensation in his left knee. Very shortly thereafter, he found it difficult to bear weight on his left leg. Mr. Caudill walked around for a few minutes thinking he could walk off the pain, but when it did not subside, he reported the injury to his supervisor and filled out an accident report. Mr. Caudill took some ibuprofen and reported to St. Mary's Medical Center to have his knee examined.

---

[1] Petitioner is represented by Steven K. Wellman, Esq. and James W. Heslep, Esq. Respondent is represented by Edwin H. Pancake, Esq.

From there he was referred to occupational medicine specialist Allen Young, M.D., who diagnosed him with a knee sprain and recommended the use of two overlapping Ace wraps over his knee joint and crutches. Dr. Young suspected a medial meniscus injury or tear of the anterior cruciate ligament and recommended an MRI and orthopedic consult.

Mr. Caudill continued to follow up with Dr. Young approximately once a week for the next month while he waited for the claim administrator to approve the recommended MRI and orthopedic consult. In the interim, his complaints of knee pain did not improve, and Dr. Young ordered him to work modified duty as tolerated to accommodate his use of crutches and his continued pain while he was weightbearing or when he straightened his knee.

On October 6, 2020, Mr. Caudill underwent an MRI of his knee which showed normal menisci, a grade one sprain and lateral collateral ligament, and an abnormal signal about the popliteal vein suggesting deep vein thrombosis ("DVT"). Mr. Caudill was sent to the emergency department for a venous duplex study which confirmed the presence of the DVT in the left femoral and popliteal vein.

On October 7, 2020, Mr. Caudill returned to Dr. Young and reported that he had started getting diffuse swelling of his left leg about a week earlier with increased pain. Mr. Caudill informed Dr. Young about the DVT diagnosis and being started on Xarelto, a blood thinner. Dr. Young noted that Mr. Caudill's knee sprain injury was improving, but now Mr. Caudill had developed a post-injury DVT that would need continued follow-up and treatment. Mr. Caudill would see a vascular specialist for the DVT, and Dr. Young would continue to follow him for the knee injury. Dr. Young also stated that due to the development of the DVT, he would recommend that Mr. Caudill discontinue work with a tentative return date of December 7, 2020. Dr. Young updated the assessment in his medical chart to reflect "post injury DVT left femoral and popliteal vein" in addition to "left knee sprain" on this date of service.

Petitioner engaged Bill Hennessey, M.D., to review Mr. Caudill's medical records. In his October 12, 2020, report, Dr. Hennessey stated that Mr. Caudill's squatting was not a mechanism of injury to his knee because it is a routine activity of daily living. He stated, "[a]s such, this is a usual activity of daily living upon which work is not considered a distinct and separate contributing factor to any medical condition at his left knee." Dr. Hennessey also opined that DVTs are more common in smokers and obese people, noting that Mr. Caudill falls in both categories. He also noted that Mr. Caudill complained of pain in the front of his knee, but a DVT occurs in the back of the knee, so the DVT could not explain his front of the knee pain. He opined that Mr. Caudill "may or may not have a left popliteal venous thrombosis, but even if he did, it is not considered work-related nor does it correlate to where he has reported pain."

By order dated October 15, 2020, the claim administrator denied the claim on the grounds that the "mechanism of injury was squatting, which is an ordinary motion of life, not unique to employment." The order concluded that because of the mechanism of injury, and Dr. Hennessey's medical opinion that Mr. Caudill did not suffer an injury resulting from his employment, the employment did not cause the injury. Mr. Caudill protested this decision.

On October 20, 2020, Mr. Caudill saw his vascular specialist, Joseph Herrmann, D.O. Dr. Herrmann's note states that Mr. Caudill hurt his knee at work about five weeks prior and was told to wrap his leg with an Ace wrap until he got an MRI. About a week to two weeks prior to the MRI, Mr. Caudill's leg became mildly swollen and was more painful. When Mr. Caudill presented for the MRI, there was concern for DVT, so he was sent to the emergency room ("ER"). A duplex scan in the ER showed a left femoral vein, popliteal vein, posterior tibial vein, peroneal vein DVT. Dr. Herrmann assessed acute embolism and thrombosis of the left femoral vein and ordered continued Xarelto for anticoagulation for at least six months. His note indicated the DVT was "likely secondary to left knee injury."

On October 28, 2020, Mr. Caudill returned to Dr. Young whose note indicates a discussion with Mr. Caudill regarding his potential return to work as Mr. Caudill was able to increase his activity. The note states:

> I am not sure if the company will allow for modified duty since they are taking the stance that the knee injury could not have occurred from work—even though he was fully squatted and that position generates a force in the knee equivalent to 6-7x body weight. He says he is going to appeal their denial.

Dr. Young signed a return-to-work certificate with specific restrictions effective November 9, 2020, for Mr. Caudill. It included no work requiring prolonged walking and/or standing; no work requiring repetitive or prolonged kneeling and/or squatting; and limited Mr. Caudill to sedentary work only. On November 23, 2020, Dr. Young reevaluated Mr. Caudill and ordered him to continue modified duty with the same restrictions.

On December 21, 2020, Mr. Caudill returned to Dr. Young for another follow-up appointment. Dr. Young's note states:

> [H]e is very slowly improving with the DVT that is the result of the injury. [H]e says the company, after having no issue for 2+ months, decided to deny the claim . . . essentially saying there was no injury. [H]e says they are trying to say the blood clot caused the injury. He may mean that they think the blood clot caused the knee joint pain. [O]f course, this is ridiculous.

3

First of all, the main etiology for blood clot is recent injury, second to be inactivity. . . these are both issues here. Also, blood clots do not cause joint pain. . . only soft tissue pain. . . this DVT is NOT in the joint, it is in the soft tissue of the leg. Also, there is a clear mechanism of injury on 08/28/2020 that would cause a joint space injury and no symptoms or findings consistent with DVT until 6 weeks later. . . when the DVT developed as a result of the work-related injury. My advice to the company and/or comp carrier would be to go back and accept the claim since their denial will not hold up in appeal and the end result will be the same. . . just take more time to get there and legal fees etc.

On March 16, 2021, Mr. Caudill's deposition was taken. He testified consistent with the medical records as to how the injury occurred to his knee while he was squatting to set delivery guards on the finish mills at work.

Petitioner hired Marsha L. Bailey, M.D. to conduct an independent medical evaluation ("IME") of Mr. Caudill. Dr. Bailey stated that Mr. Caudill's symptoms upon her examination were not from his left knee joint or from his work incident of August 28, 2020. She reported that Mr. Caudill said he had performed the same activity at work hundreds if not thousands of times, and opined that "standing from a squatting position is an activity of daily living and is not unique to Mr. Caudill's workplace." Dr. Bailey further stated that obesity and heavy cigarette smoking are common risk factors for developing a DVT, and that the greatest risk of developing a DVT post-injury is within the first two days and up to ten days post-injury. Mr. Caudill's diagnosis of DVT more than five weeks after his initial injury therefore falls outside the statistical risk category. Dr. Bailey opined that Mr. Caudill had strong personal risk factors for developing a DVT in the absence of any work-related mechanism of injury and opined that his DVT and left knee complaints are unrelated to the events at work on August 28, 2020.

By order dated March 18, 2022, the OOJ affirmed the claim administrator's denial on the basis that the general public is exposed to squatting. The OOJ's order stated that although Mr. Caudill submitted evidence opining that he had sustained a work-related injury, he had not submitted any opinion that the type of squat he performed was not of the general public kind or that it was unique to his workplace. The OOJ's order stated that it "cannot determine that a three-to-five-minute squat is excessive or overburdening without another medical opinion opining as such." The claim was denied on that basis, and Mr. Caudill appealed.

Upon review, the Board reversed and vacated the OOJ order and held the claim compensable for a left knee sprain and post-injury DVT left femoral and popliteal vein, by order dated August 3, 2022. The Board found that Mr. Caudill's substantial rights had been

prejudiced and the OOJ's analysis and conclusions were clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. The Board's order states that it considered the evidence in light of the preponderance of the evidence standard, and concluded that the medical evidence and Mr. Caudill's testimony established that Mr. Caudill injured his knee in the course of and resulting from his employment. The Board relied on the medical opinion of Mr. Caudill's treating occupational medicine physician, Dr. Young, whose December 21, 2020, note stated that there is a clear mechanism of injury on August 28, 2020, and that six weeks later, the DVT developed as a result of the work-related injury. The Board noted that Mr. Caudill's job duties required him to squat for approximately five minutes, set five delivery guards on the finish mill, and then return to a standing position. The Board likened Mr. Caudill's claim to that of *AT&T Mobility Services, LLC v. Spoor,* No. 14-0396, 2015 WL6840126 (Nov. 4, 2015) (memorandum decision), in which the claimant's injuries were compensable even though she sustained them from merely turning around quickly because the court found that her job responsibilities required her to assist customer service agents quickly to reduce customer wait time. In *Spoor*, while the claimant was helping an agent, she was beckoned by another agent behind her. As she turned to help the other agent, she took an awkward step and felt a sudden onset of pain. *Id*. The *Spoor* Court found that the evidence therein established she was injured in the course of and as a result of her employment, so her injuries were compensable. *Id*. Likewise, here the Board found Mr. Caudill's injuries were compensable because he received them in the course of and as a result of his employment. It is from the Board's order that petitioner appeals herein.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1)     In violation of statutory provisions;
> (2)     In excess of the statutory authority or jurisdiction of the Board of Review;
> (3)     Made upon unlawful procedures;
> (4)     Affected by other error of law;
> (5)     Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

5

On appeal, petitioner argues that although Mr. Caudill's knee pain began while he was at work, it did not result from his employment because he was performing a routine function or motion that he could have done anywhere or at any time. As such, the squatting was not excessive and did not present a risk unique to his employment. Petitioner compares the instant claim to the *Stone* case in which the employee's alleged injury arising from simply picking up a latex glove was deemed not compensable. *Stone v. W. Va. Off. of Ins. Comm'r,* No. 101386, 2012 WL 2924144 (Feb. 22, 2012) (memorandum decision). In *Stone*, the Board observed, "simply because something happens while the claimant is at work does not mean it was the result of the employment." *Id*. Petitioner also cites to the *Price* case, in which the claimant spontaneously fell to the floor while simply walking across the workplace. *Price v. Kingsford Mfg. Co*., No. 13-1272, 2015 WL 1610149, at *1 (Apr. 6, 2015) (memorandum decision). In that case, the claim was denied as the injury merely coincided with being at work but was not actually the result of any work being performed. *Id*.

Petitioner also argues that the preponderance of the medical evidence in this case supports the rejection of Mr. Caudill's claim, including the medical opinions of Dr. Bailey and Dr. Hennessey who opined that Mr. Caudill's weight and smoking put him at risk for developing a DVT in the absence of any injury. Petitioner argues that by reversing the order of the OOJ, the Board overstepped its authority, failed to give proper deference to the OOJ as the factfinder, and did so in contravention of the preponderance of the evidence.

Although the Board's order employs imprecise language regarding its standard of review, including both a reference to a preponderance of evidence standard on page three, and to the clearly wrong standard from West Virginia Code § 23-5-12(b)(5) (2021) on page two, we find no reversible error. To be clear, the Board's reversal on the basis that the OOJ's decision was clearly wrong in light of the reliable, probative, and substantial evidence on the whole record was properly within the Board's standard of review when it issued this Order.[2] The Board found that the reliable, probative, and substantial evidence on the whole record established that Mr. Caudill's job duties required him to squat for approximately five minutes, set five delivery guards on the finish mill, and then return to a standing position. During this process, Mr. Caudill felt a popping sensation in his left knee making weight-bearing difficult. He was examined on the date of the injury by a medical professional who diagnosed a left knee sprain, which was the direct result of an occupational injury. Dr. Allen Young then treated Mr. Caudill and diagnosed him with the left knee sprain, and then added the diagnosis of post-injury DVT left femoral and popliteal vein after it developed. In his report of December 21, 2021, Dr. Young opined that there was a clear mechanism of injury on August 28, 2020, and that the DVT developed later as

_____

[2] The OOJ and the Board as existed at the time of the underlying decisions have been reorganized. Effective October 1, 2022, the OOJ has been terminated and, as of July 1, 2022, the Board has been reconstituted and authorized to assume the duties of the OOJ. *See* W. Va. Code § 23-5-8a (2022).

a result of the work-related injury. The Board concluded that Mr. Caudill's injury was attributable to a definite, isolated fortuitous occurrence on August 28, 2020, and that the medical evidence and Mr. Caudill's testimony established that Mr. Caudill injured his knee in the course of and resulting from his employment. Therefore, we find that the decision of the Board is not in violation of any statutory provision, nor is it in excess of the authority or jurisdiction of the Board, nor is it clearly wrong in view of the reliable, probative, and substantial evidence on the whole record.

Accordingly, we affirm.

Affirmed.

**ISSUED:** December 2, 2022

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge David H. Wilmoth, sitting by temporary assignment

Judge Thomas E. Scarr, voluntarily recused